IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ABDUL ALI,

    Petitioner,               No. CIV S-03-1023 DFL DAD P

    vs.

KATHY MENDOZA-POWERS, et al.,

    Respondents.          FINDINGS & RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 1999 judgment of conviction entered against him in Sacramento Superior Court on a charge of possession of cocaine with two prior prison terms. He seeks relief on the grounds that: (1) his right to due process was violated when the prosecutor failed to prove one of the elements of the offense; and (2) he received ineffective assistance of trial counsel. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

/////

/////

/////

1

PROCEDURAL AND FACTUAL BACKGROUND[1]

A search of defendant's residence yielded a small quantity (.01 grams) of rock cocaine found in a pair of green khaki pants. Defendant's girlfriend told police that the pants belonged to defendant. An expert testified that .01 grams is a useable amount of rock cocaine.

Defendant presented no witnesses. His trial attorney argued the prosecution evidence was insufficient to show beyond a reasonable doubt that defendant owned or controlled the pants and knew of the presence of rock cocaine in them. The jury returned a verdict of guilty.

Defendant moved for a new trial on the ground of ineffective assistance of counsel, claiming his trial attorney had denied him a defense by stipulating to defendant's knowledge of the presence of the rock cocaine and his knowledge of its nature as a controlled substance.

At the hearing on the motion, defendant's trial attorney testified that he did not stipulate to defendant's knowledge of the presence of rock cocaine, but only to his knowledge of the illegal nature of rock cocaine. Counsel testified that the stipulation was necessary to prevent the admission of defendant's prior drug conviction into evidence at trial.

The trial court denied the new trial motion and sentenced defendant to a prison term of 3 years, 4 months, with credit for time served and for good conduct.

Petitioner filed an appeal of his conviction, in which he claimed that he received ineffective assistance of counsel when his trial attorney stipulated to his knowledge of the presence of cocaine. (MTD, Ex. B.) The California Court of Appeal affirmed petitioner's conviction in a reasoned decision dated June 6, 2000. (Id.)

On July 20, 2000, petitioner filed a petition for writ of habeas corpus in the California Superior Court, in which he claimed that: (1) he received ineffective assistance of trial counsel; (2) "a conspiracy existed between counsel and the prosecutor denying petitioner due

---

[1] The following summary is drawn from the June 6, 2000 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion) at pg. 2, filed as Exhibit B to respondents' April 16, 2004 Motion to Dismiss (MTD).

process;" (3) the prosecutor committed misconduct; and (4) the trial court violated his right to counsel when it denied petitioner's motion for substitute counsel. (MTD, Ex. C.) That petition was denied in a reasoned decision dated August 18, 2000. (MTD, Ex. D.)

On March 22, 2001, petitioner filed another petition for writ of habeas corpus in the California Superior Court. (MTD, Ex. E.) Therein, he claimed that: (1) the prosecutor failed to prove the element of "usable form;" and (2) his trial and appellate counsel rendered ineffective assistance. (Id.) That petition was denied in a reasoned decision dated June 21, 2001. (MTD, Ex. F.) Petitioner subsequently filed a petition for a writ of habeas corpus in the California Court of Appeal, which was denied by order dated December 13, 2001. (MTD, Ex. G.)

On February 22, 2002, petitioner filed a petition for writ of habeas corpus in the California Supreme Court. (MTD, Ex. H.) Therein, he claimed that: (1) the prosecutor failed to prove the element of "usable form;" and (2) his trial and appellate counsel rendered ineffective assistance. (Id.) That petition was summarily denied by order dated July 10, 2002. (MTD, Ex. I.)

ANALYSIS

I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues de novo. Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

1062, 1067 (9th Cir. 2003). Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

II. Petitioner's Claims

   A. Failure to Prove an Element of the Crime

Petitioner's first claim is that the prosecutor failed to prove beyond a reasonable doubt one of the elements of the offense of possession of cocaine base. Specifically, he contends that the prosecutor has the burden of proving the "usability of the controlled substance." (Pet. at

5.) Petitioner claims that the element of "usable form" was "never addressed" and was "completely overlooked" by the prosecutor, defense counsel, and the trial judge. (Id.) He also claims that the jury instruction given at his trial regarding the elements of the offense improperly failed to list the element of "usable form."[2] Petitioner explains that the element of "usable form" is distinct from and "should not be confused with the usable amount element." (Id.)

This claim was raised for the first time in petitioner's March 22, 2001 petition for a writ of habeas corpus filed in the California Superior Court. (MTD, Ex. E.) In that petition, petitioner contended that "a narcotic in an unusable form remains unusable regardless of its quantity or quality." (Id. at 3.) Petitioner also argued that the California Jury instructions are "in error for neglecting to list USABLE FORM as an element of H&S 1350A." (Id.) The Superior Court rejected these arguments, reasoning that "an expert testified at trial that .01 grams of rock cocaine are a useable amount." (MTD, Ex. F at 1.) After the Superior Court issued its decision, petitioner filed a petition for writ of habeas corpus in the California Supreme Court, arguing that the Superior Court had confused the term "useable amount" with the term "useable form." (MTD, Ex. H at consecutive p. 10.)

/////

---

[2] Petitioner's jury was instructed that:

> In order to prove [a violation of Cal. Health & Safety Code § 11350(a)] each of the following elements must be proved:
>
> 1. A person exercised control over or the right to control an amount of cocaine base, a controlled substance;
>
> 2. That person knew of its presence;
>
> 3. That person knew of its nature as a controlled substance; and
>
> 4. The substance was in an amount sufficient to be used as a controlled substance.

(Clerk's Transcript on Appeal (CT) at 71.) Petitioner argues that this instruction "overlooked" the element of "usable form." (Pet. at 5.)

Petitioner was charged in this case with possession of cocaine, in violation of Cal. Health & Safety Code § 11350(a). (CT at 31.) That code section provides:

> Except as otherwise provided in this division, every person who possesses (1) any controlled substance specified in subdivision (b) or (c), or paragraph (1) of subdivision (f) of Section 11054, specified in paragraph (14), (15), or (20) of subdivision (d) of Section 11054, or specified in subdivision (b) or (c) of Section 11055, or specified in subdivision (h) of Section 11056, or (2) any controlled substance classified in Schedule III, IV, or V which is a narcotic drug, unless upon the written prescription of a physician, dentist, podiatrist, or veterinarian licensed to practice in this state, shall be punished by imprisonment in the state prison.

The essential elements of possession of a controlled substance are "dominion and control of the substance in a quantity usable for consumption or sale, with knowledge of its presence and of its restricted dangerous drug character." People v. Palaschak, 9 Cal. 4th 1236, 1242 (1995).

Petitioner contends that the prosecution had the burden of proving the cocaine was in a "usable form," as distinguished from a "usable quantity." In support of this argument, petitioner cites to 1 Witkin & Epstein, Cal. Criminal Law § 84 (3d ed. 2000). Petitioner's claim that California law requires that in order to support a possession conviction a narcotic must be in a usable form is well-taken. However, this court concludes that petitioner is not entitled to relief on that basis given the facts of this case as established by the record.

Witkin does explain that one element of the offense of possession of narcotics is "[a] specified controlled substance, in a sufficient quantity and in a usable form." (Id. at § 82, p. 592.) Specifically, Witkin states that:

> Usability of the controlled substance is an element of the offense and the prosecution has the burden of proving that element. In People v. Vargas, (1973) 36 C.A.3d 499, 111 C.R. 745, narcotics agents seized a glass jar containing marijuana immersed in alcohol, which defendant said was medicine for his rheumatism. Evidence showed that persons of Mexican descent commonly use a mixture of alcohol and marijuana to treat arthritis, rheumatism, and other muscular aches and pains, and also that the seized mixture could not be used as a narcotic. There was no evidence on whether the mixture could be reconverted to a narcotic. *Held*, that the

/////

>    prosecution did not meet its burden of establishing that the
>    substance was usable as a narcotic.

(Id. at § 84, p. 597.)

Similarly, in People v. Leal, 64 Cal. 2d 505 (1966), the defendant was convicted of possessing heroin based on residue found on his cooking spoon, which weighed one-half grain and "contain [ed] heroin." Id. at 508. Reversing the judgment of conviction, the court in Leal disapproved of a line of cases holding that possession of even minute traces of drugs was punishable, noting that in such cases the defendant may be unaware of the presence of the drug, thus defeating one of the essential elements of the crime of possession. Id. The court observed that cases contrary to the disapproved line of cases "have evinced a fundamental doubt that the statute, properly construed, applies to the possession of narcotics so limited in quantity or so altered in form as to be useless for narcotic purposes." Id.

However, the California Supreme Court has subsequently characterized the decision in Leal as merely holding that in prohibiting the possession of a substance with a narcotic potential, the Legislature "'did not refer to useless traces or residue of such substance.'" People v. Rubacalba, 6 Cal. 4th 62, 65 (1993) (quoting Leal, 64 Cal. 2d at 512). Surveying the decisions construing Leal, the California Supreme Court observed:

>    These cases make clear, and we agree, that the Leal usable-quantity
>    rule prohibits conviction only when the substance possessed simply
>    cannot be used, such as when it is a blackened residue or a useless
>    trace. It does not extend to a substance containing contraband, even
>    if not pure, if the substance is in a form and quantity that can be
>    used. No particular purity or narcotic effect need be proven.

Id., 6 Cal. 4th at 66.

Finally, relying on the decision in Leal, the California Court of Appeal for the Fifth Appellate District concluded that "the usability of a narcotic is an element of the crime charged" and explained that "a narcotic in an unusable form remains unusable regardless of its

/////

quality or quantity." People v. Vargas 36 Cal. App. 3d 499, 506 & n.5 (1973). The court explained its conclusion in this regard as follows:

> Extending and applying the logic of Leal [64 Cal.2d 504 (1966)]to the facts in the case at bench, the conclusion is inescapable that the Legislature could not have intended to punish the possession of a substance normally used as a narcotic but possessed in a form which is unusable as a narcotic, at least in the absence of proof that the form in which it is possessed can be converted to a usable narcotic form. In the absence of such proof the substance cannot be held to have a narcotic potential as defined in Leal.
>
> For example, though hemp rope is made from the fiber of the marijuana plant, it would be absurd to conclude that the Legislature intended to punish the possession of hemp rope, it obviously not being in a form which can be used as a narcotic.

36 Cal. App. 3d at 506 & n.4.[3]

      The facts of the instant case are unlike those in either Leal, in which the heroin crystals had been heated and were no longer in a "form" suitable for use, or Vargas, where the marijuana had been rendered unusable by being immersed in alcohol. Here, a prosecution expert testified at petitioner's trial that the substance found in petitioner's residence was rock cocaine weighing 0.01 grams, which he opined was a "usable amount." (Reporter's Transcript on Appeal (RT) at 55-59.) In other words, the cocaine was both in its normal, unadulterated form for personal use and was of a usable quantity. Only the quantity, not the form, of the substance found at petitioner's residence was at issue in petitioner's trial. Under California law, where the controlled substance remains in its normal form for personal use, Leal's prohibition on basing a possession conviction on unusable drug residue simply does not apply. See People v. Wesley, 177 Cal. App. 3d 397, 400 (1986) (both remains of heroin and cocaine were in the "normal form" for personal use); People v. Morales, 259 Cal.A pp. 2d 290, 295 (1968) (heroin possessed was in "its normal powdery form in a condition and of a quality for immediate use").

/////

---

[3] It appears that the decision in Vargas is the only published decision attempting to apply the holding in Leal to the question of whether a narcotic is in a useable form.

8

The prosecution in a criminal case has the burden of proving each and every element of the crime charged beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Juan H. v. Allen, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005). In order to grant a writ of habeas corpus under AEDPA, the court must find that the decision of the state court reflected an objectively unreasonable application of Jackson and Winship to the facts of the case. Juan H, 408 F.3d at 1274. The federal habeas court determines the sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16; Chein v. Shumsky, 373 F.3d 978, 983 (9th Cir. 2004).

This court concludes that the evidence presented at petitioner's trial was sufficient to sustain his conviction for possession of cocaine base in light of the criminalist's testimony that the drug was a usable quantity. The form of the cocaine petitioner possessed was simply not at issue in his trial because there was no dispute that the cocaine found in petitioner's residence was in a useable form. Even if one could argue that the jury should have been instructed concerning the form of the cocaine, any such error was harmless. Because the possession charge against petitioner was not based upon mere residue or cocaine which was adulterated in some way so as to not be in a usable form, petitioner could not have been prejudiced by the court's failure to instruct the jury that a controlled substance must be in a usable form in order to support a conviction for possession.

The decision of the California Superior Court denying petitioner relief on his claim that his right to due process was violated by the prosecutor's failure to prove an essential element of the offense is not contrary to or an unreasonable application of federal law. Accordingly, petitioner is not entitled to relief on this claim.

/////

B.  Ineffective Assistance of Counsel

Petitioner claims that his trial counsel rendered ineffective assistance when he stipulated at trial that petitioner knew he had cocaine in his pants pocket. (Pet. at 5.) This argument was rejected by the California Court of Appeal on direct appeal. The appellate court explained the background to the claim and the reasoning behind its decision as follows:

> To convict defendant of possessing cocaine base, the prosecutor had to prove four elements: (1) defendant controlled or exercised the right to control a quantity of cocaine base, (2) he knew of its presence, (3) he knew of its nature as a controlled substance, and (4) the amount was usable. (People v. Francis (1969) 71 Cal.2d 66, 73; CALJIC No. 12.00.)
>
> The following occurred during trial:
>
> "[The prosecutor]: We have one last stipulation. It goes to one of the elements, and then the People will be ready to rest. [¶] The last stipulation the parties entered into is the defendant knew of Exhibit 1a, the rock substance, and its nature as a controlled substance.
>
> "THE COURT:  Is that stipulated to [defense counsel]?
>
> "[Defense counsel]:  Stipulated.
>
> "THE COURT:  Very well.  The jury may accept that fact as if it had been proven."
>
> Defendant claims that, by entering into this stipulation, his trial attorney deprived him of his Fifth and Sixth Amendment rights to a jury determination of two elements, i.e., defendant's knowledge of the presence and knowledge of the nature of the cocaine base found by the police. Defendant further argues his trial attorney had no reasonable tactical basis for the stipulation, and thus performed below the standard to be expected of reasonably competent counsel.
>
> The People retort that the stipulation conceded only defendant's knowledge of the nature of cocaine base, and that he was not prejudiced by "what was at most, a poorly worded stipulation."
>
> For reasons that follow, we conclude the trial court did not abuse its discretion in finding no ineffective assistance of counsel. (Cf. People v. Wallin (1981) 124 Cal.App.3d 479, 483.)
>
> To obtain a reversal based on ineffective assistance of counsel, defendant must show (1) his trial attorney's conduct fell below an

10

objective standard of reasonableness, and (2) there is a reasonable probability that, but for his attorney's deficient performance, it is reasonably probable that defendant would have obtained a more favorable result. (In re Ross (1995) 10 Cal.4th 184, 201.)

It is uncontradicted that the tactical consideration in entering into the stipulation was to avoid the introduction of evidence of defendant's prior cocaine conviction. In defense counsel's words, "otherwise [the People] would have brought in [defendant's] prior if he disputed his knowledge of the nature of [cocaine base]. It's not [the] presence; it's the nature of it. Then they would have been able to bring in front of the jury that he had a 11350 prior."[4]

This was a legitimate tactical basis for stipulating to defendant's knowledge that cocaine base is a controlled substance. (People v. Floyd (1970) 1 Cal.3d 694, 709 [It is not enough to assert that counsel's tactics were poor or that the case could have been handled more effectively. Defendant must show that counsel's conduct cannot be explained on the basis of any knowledgeable choice of tactics]; see also People v. Frausto (1982) 135 Cal.App.3d 129, 139.)

Of course, there could have been no legitimate tactical basis upon which to stipulate defendant knew of the presence of cocaine base in the pants. However, we are not persuaded by defendant's claim that the jurors would have understood the stipulation to concede this element of the crime.

As the People acknowledge, the stipulation was not a model of clarity. Nevertheless, the trial court, the prosecutor, and defense counsel all appear to have understood it as conceding only a single element, i.e., defendant's knowledge of the nature of cocaine base as a controlled substance.

In presenting the stipulation, the prosecutor said it went to only "one" element, and the trial court advised the jury to treat "that fact" (i.e., a singular proposition) "as if it had been proven." While the stipulation referred to "Exhibit 1a, the rock substance," it did not say defendant knew of the "presence" of cocaine base in the pants. Rather, it spoke of defendant's knowledge of "its nature as a controlled substance."

And, during summation to the jury, the prosecutor did not argue as if the stipulation had established that defendant knew of the presence of the cocaine base in the pants. As to this element, the prosecutor pointed to evidence that the pants and cocaine base (1) were found in defendant's residence, a one-bedroom apartment, (2)

---

[4] Actually, defendant had a prior conviction for violating Health and Safety Code section 11351.5, possession of cocaine base for sale.

11

> defendant was "found sleeping on the bed with just a shirt, no shorts, no shoes, and just two feet away from his bed are his shoes and his pair of pants and two shirts," (3) the pants, shirts, and shoes were male clothing that had been placed on a pile of female clothing, (4) defendant's girlfriend told officers that the pants belonged to defendant, and (4) when officers advised him that he was being arrested for possession of cocaine base, defendant responded, "For that little bit?"
>
> Likewise, defense counsel never referred to the stipulation as addressing the element of possession. To the contrary, defense counsel vigorously questioned the credibility of the prosecution's evidence on this point, and argued that there was insufficient circumstantial evidence to establish beyond a reasonable doubt that defendant knew of the presence of the cocaine base.
>
> Moreover, had the jurors understood the stipulation to concede the only issue that really was debated in this case – whether defendant knew of the presence of cocaine base and exercised control over it – they undoubtedly would not have deliberated as they did for over a day.
>
> Under the circumstances, the stipulation did not result in a withdrawal of the defense on the element of knowing possession. And it cannot be said defendant's trial counsel acted below an objective standard of reasonableness by stipulating to defendant's knowledge of the nature of cocaine base as a controlled substance, so as to avoid the damaging introduction of his prior cocaine base conviction.

(Opinion at 3-7.)

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice

is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There is in addition a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).  However, that deference "is predicated on counsel's performance of sufficient investigation and preparation to make reasonably informed, reasonably sound judgments." Mayfield v. Woodford, 270 F.3d 915, 927 (9th Cir. 2001) (en banc).

The decision of the California Court of Appeal that petitioner's counsel did not render ineffective assistance when he entered into the stipulation described above is not an unreasonable application of Strickland and therefore may not be set aside.  Petitioner's trial counsel explained at the hearing on the motion for new trial that he intended to stipulate only to the third element of the charge: that petitioner knew "what . . . rock cocaine looks like." (RT at 195.)  He stated that he entered into the stipulation in order to prevent petitioner's prior conviction from being disclosed to the jury. (Id.)  As explained by the state appellate court, counsel's tactical decision in this regard was reasonable and therefore cannot form the basis of

/////

habeas corpus relief. See Strickland, 466 U.S. at 687 (counsel's tactical decisions are "virtually unchallengeable").

It is true that the wording of the stipulation, standing alone, could give rise to an interpretation that petitioner was admitting he knew the cocaine was in his pants pocket. However, as explained by the state appellate court, the conduct of the trial belied this interpretation of the stipulation. In closing argument, the prosecutor specifically informed the jury that the stipulation sufficed to satisfy the "third" element of the charge against petitioner: that he "knew of its nature as a controlled substance." (RT at 106.) Petitioner's trial counsel also argued to the jury that the stipulation established only that petitioner "knew of its nature . . . That is, you know what the controlled substance looks like." (Id. at 115-16.) Finally, petitioner's trial counsel argued to the jury that the first two elements of the charge (that petitioner controlled the cocaine and knew it was in his pocket) had not been proven and that, in fact, petitioner did not possess or know about the cocaine. (Id. at 115-123.)

The state court record, including the record of trial counsel's testimony at the hearing on the motion for new trial, reflects that counsel intended to stipulate only to petitioner's knowledge that cocaine was a controlled substance, and did not intend to stipulation that petitioner knew he had cocaine in his clothing. The record also reflects that this understanding of the stipulation was shared by the prosecutor and the trial court and was the understanding argued to the jury. The state appellate court was reasonable to conclude that the jurors understood it that way as well. Under the circumstances presented here, trial counsel's decision to enter into the stipulation did not fall below an objective standard of reasonableness and did not result in prejudice. Accordingly, petitioner is not entitled to relief on this claim.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

/////

1  These findings and recommendations are submitted to the United States District
2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
3  days after being served with these findings and recommendations, any party may file written
4  objections with the court and serve a copy on all parties.  Such a document should be captioned
5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6  shall be served and filed within ten days after service of the objections.  The parties are advised
7  that failure to file objections within the specified time may waive the right to appeal the District
8  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
9  DATED: May 9, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:ali1023.hc